# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-01445-RBJ-GPG

RMR INDUSTRIALS, INC., a Nevada Corporation,

       Plaintiff,

   v.

GARFIELD COUNTY, COLORADO; and THE GARFIELD COUNTY BOARD OF COUNTY
COMMISSIONERS, JOHN MARTIN, TOM JANKOVSKY, and MIKE SAMSON, in their
official capacities,

       Defendants.

## MOTION TO DISMISS OR STAY

**ARNOLD & PORTER KAYE SCHOLER
LLP**
Timothy R. Macdonald
Kathleen K. Custer
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Telephone: (303) 863-1000
Fax: (303) 832-0428
timothy.macdonald@arnoldporter.com
katie.custer@arnoldporter.com

*Attorneys for Defendant*

Garfield County, Colorado, the Garfield County Board of County Commissioners, and John Martin, Tom Jankovsky, and Mike Samson in their official capacities (collectively, the "County" or "Defendants"), request that the Court dismiss or stay this case pursuant to the abstention doctrines articulated in *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*") and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*").

Plaintiff RMR Industrials, Inc. ("RMR" or "Plaintiff") operates a quarry in Garfield County pursuant to County resolutions and permit. The County issued a Notice of Violation ("NOV") in May 2019 because RMR was not operating the quarry consistent with the conditions of the permit. Prior to the filing of this lawsuit, RMR filed a state court lawsuit against the County (the "State Court Action") challenging the issuance of the NOV and seeking declarations that the County cannot enforce its own conditions or the NOV—the same relief RMR seeks in this Court.

*Younger* requires the Court to abstain from cases such as this where there is an ongoing state court proceeding that involves important state interests and provides an adequate forum to hear Plaintiff's claims. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997), *cert. denied*, 523 U.S. 1005 (1998)). Similarly, *Colorado River* applies in the instant case and grants the Court the power to refrain from hearing cases, like this one, "which are duplicative of a pending state proceeding." *CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 588 (10th Cir. 2018) (unpublished) (quoting *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013)). This "principle—the avoidance of duplicative litigation—is at the core of the *Colorado River* doctrine." *Id.* (quoting *D.A. Osguthorpe*, 705 F.3d at 1233). Because Defendants meet the factors for

abstention under both *Younger* and *Colorado River*, and abstention will serve judicial economy and avoid duplicative litigation, Defendants request that the Court dismiss or stay this case.

## FACTUAL BACKGROUND

In 1982 and 1983, Plaintiff's predecessor-in-interest, Mid-Continent Resources, Inc. ("Mid-Continent") applied for and obtained permits to operate a limestone quarry from Garfield County, the Colorado Division of Reclamation, Mining and Safety ("DRMS"), and the Bureau of Land Management ("BLM"). ECF No. 1, ¶¶ 16-26.[1] The County's resolution and special use permit allowed for quarry operations on a 16.3 acre site and required Mid-Continent to, among other things, maintain the haul road, comply with all present and future County regulations on the extraction of mineral resources, maintain certain mining and processing hours, and conduct the operation from only April 15 through December 15 of each year. *Id.* ¶¶ 18-25, 34.

In 2009, CalX Minerals, LLC ("CalX"), Plaintiff's immediate predecessor-in-interest, acquired the quarry from Mid-Continent. *Id.* ¶ 33. The County amended the permit by resolution in 2010 and required CalX to submit a "Road Maintenance Plan." *Id.* ¶ 34, 37. CalX submitted its contract with Glenwood Tramway, LLC to satisfy this requirement. *Id.* ¶ 37. CalX later sought an exception from the BLM to the April 15 to December 15 operating limitation, also called the "big game winter range timing limitation," which the BLM granted on December 18, 2015. *Id.* ¶ 40.

Plaintiff acquired the quarry from CalX in or about October 2016. *Id.* ¶ 42. Like CalX, Plaintiff requested and obtained an exception from BLM to the "big game winter range timing limitation," but failed to request (or receive) the County's approval for the same. *Id.* ¶ 45. At some

---

[1] Solely for the purposes of this Motion, Defendants accept as true the factual allegations in the Complaint. Defendants reserve the right to challenge the factual allegations if the matter proceeds.

point, Plaintiff requested and received approval from DRMS and BLM to perform exploratory drilling for dolomite, but again failed to seek the County's approval. *Id.* ¶¶ 52-53.

In 2019, the County conducted a compliance review of Plaintiff's operations at the quarry. *Id.* ¶ 54. Following a public meeting, the County issued the NOV to Plaintiff, which stated that Plaintiff's operation violated the County's permit by: (1) exceeding 16.3 acres; (2) drilling for and selling materials outside of the original approvals; (3) crushing rock between December 15 and April 15; (4) disregarding the road maintenance plan; and (5) drilling for dolomite. *Id.* ¶ 56. The NOV requested Plaintiff correct the violations by June 1, 2019. *Id.* ¶ 57.

Thereafter, on May 17, 2019, Plaintiff filed the State Court Action against the County in Garfield County District Court. *See* C.R.C.P. 106(a)(4) Compl. (attached as Exhibit A).[2] In the State Court Action, Plaintiff asks the court to review the NOV, and to find that the Board acted arbitrarily and capriciously and exceeded its jurisdiction by issuing the NOV. Ex. A ¶¶ 69-71. Plaintiff further requests the state court to declare: (1) "that the DRMS permits control over the County permits, and the BLM permits and authorizations control over both of them"; (2) that the County does not precisely define the acreage of the operation, which conflicts with a DRMS regulation, such that the County "must yield to these controlling state regulations"; (3) there is no enforceable restriction on the size, shape, or type of products; (4) the BLM's exemption to the big game winter range timing limitation preempts the County's restriction of the same and is moot; (5) the County lacks authority to enforce the Road Maintenance Plan contract; and (6) drilling for

---

[2] The Court can take judicial notice of the complaint without converting this motion into a motion for summary judgment. *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001) (allowing judicial notice of facts in the public record); *see Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (taking judicial notice does not convert a motion).

dolomite does not violate the County's permits and is moot. *Id.* ¶¶ 77 and 77(a)-(e). Plaintiff subsequently filed this action in federal court seeking essentially the same relief it seeks in the State Court Action.

## I.   ABSTENTION IS WARRANTED UNDER *YOUNGER*

Per *Younger*, "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Amanatullah*, 187 F.3d at 1163 (quoting *Taylor,* 126 F.3d at 1297). "*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Id.* at 1163. The Supreme Court recently reaffirmed that *Younger* applies in three different circumstances: (1) state criminal proceedings; (2) civil enforcement proceedings; and (3) civil proceedings involving orders that uniquely further the state courts' ability to perform judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). This case involves a civil enforcement proceeding. Because the elements of *Younger* abstention are satisfied and there are no extraordinary circumstances precluding its application, the Court should decline jurisdiction and dismiss this case.

### A.   There Is An Ongoing State Proceeding

It is undisputed that there is an ongoing state civil proceeding. Plaintiff initiated the State Court Action on May 17, 2019. The next question is whether the State Court Action is the type of state proceeding to which *Younger* abstention applies. The answer is yes.

As indicated above, *Younger* precludes "federal intrusion" into three types of state court proceedings, including "civil enforcement proceedings." *Sprint*, 571 U.S. at 78 (internal citations omitted). Whether the State Court Action qualifies as a civil enforcement proceeding depends on whether it is "remedial or coercive," with only coercive proceedings entitled to *Younger* deference. *Ree-Co Uranium L.P. v. N.M. Mining Comm'n*, No. 9-CV-881 WJ/ACT, 2011 WL 13272411, at *5 (D.N.M. Feb. 11, 2011). To decide if the State Court Action is remedial or coercive, the Court must consider several factors, including: (1) whether Plaintiff "initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory (a coercive proceeding);" (2) whether Plaintiff "contends that the state proceeding is unlawful (coercive)" or "seeks a remedy for some other state-inflicted wrong (remedial);" and (3) whether Plaintiff "sought to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act." *Id.* at *5-7 (quoting *Brown ex rel. Brown v. Day*, 555 F.3d 882, 889,  891 (10th Cir. 2009)). Applying these factors, the State Court Action is a civil enforcement proceeding subject to *Younger* abstention.

An examination of a similar case, *Ree-Co Uranium L.P. v. New Mexico Mining Commission*, 2011 WL 13272411, is instructive here. In *Ree-Co*, the plaintiff filed a notice with the BLM to stake mining claims on federal and private lands and began exploratory drilling. *See id.* at *1. The plaintiff, however, failed to request the appropriate state permit, and New Mexico issued plaintiff a "Notice of Unpermitted Exploration Drilling," followed by a "Notice of Violation." *See id.* at *2. The plaintiff and the state settled the Notice of Violation, and the plaintiff then sought a general state permit. *See id.* New Mexico granted the plaintiff the requested general permit, but imposed conditions on the plaintiff's drilling activity, including requiring that if the

plaintiff wanted to drill 1200-foot-deep holes, the plaintiff would need to apply for a different permit. *See id.*

Rather than apply for the additional permit, the plaintiff sought review at both the state and federal level. *See id.* The plaintiff first filed a petition with the New Mexico Mining Commission, arguing that the permit violated New Mexico regulations and that federal mining law preempted New Mexico's regulations (just as RMR argues here and in the State Court Action). *See id.* The New Mexico Mining Commission disagreed. It found the permit did not violate state law and was not preempted by federal law. *See id.* The plaintiff appealed that decision to a state district court. *See id.* at *3. The plaintiff then filed the federal lawsuit, arguing again that federal mining law preempted New Mexico's regulations—just as RMR argues here. *See id.* The defendants in the federal lawsuit moved to dismiss pursuant to *Younger*. *See id.*

The United States District Court for the District of New Mexico applied *Younger* and dismissed the case. The court held that the state court action was coercive rather than remedial, even though the plaintiff had initiated the state court case (as RMR did here), explaining that "[w]hile Ree-Co did initiate the challenge in filing for review of the restrictions imposed by the General Permit, it did so only as a response to the permit's imposition of restrictions placed on its drilling activities." *Id.* at *7. The court further explained that, "the coercive nature of the state proceeding did not end with the settlement regarding the Notice of Violation, but continued into the General Permit application process because Ree-Co's participation in those proceedings was necessary in order to proceed further with its business of locating and discovery." *Id.* Finally, the court considered the state's penalty assessments for denials of permits, and found that in light of the restrictions on the plaintiff's activities in both the Notice of Violation and the general permit,

6

"[i]t is not so difficult to perceive a punitive element within the facts of this case," and "[p]laintiffs' efforts are directed at reversing those adverse actions." *Id.*

Like the proceedings in *Ree-Co*, the State Court Action here is a civil enforcement proceeding. First, while it was Plaintiff that filed the State Court Action, it did so only in response to the County's NOV and to prevent enforcement of the same. *See* Ex. A ¶¶ 67-73. Second, the State Court Action alleges that the County acted unlawfully, in part, because Plaintiff claims the NOV is "in conflict with both DRMS and BLM regulations, both of which trump the County's authority." *Id.* ¶ 71. Finally, the NOV itself states several potential penalties if Plaintiff fails to come into compliance, including but not limited to criminal enforcement and County court civil penalties. The State Court Action is thus "coercive" and satisfies the first *Younger* element.

**B.      The State Court Action Is An Adequate Forum For Plaintiff's Constitutional Claims**

Because Plaintiff can raise its constitutional claims in state court, the second *Younger* element is also met. "It is sufficient for purposes of *Younger* abstention that federal challenges . . .may be raised in state court judicial review of administrative proceedings." *Amanatullah*, 187 F.3d at 1164. This is so even where a plaintiff has not asserted federal constitutional claims in the state case. Indeed, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 (1987).

Tellingly, RMR has already asked the state court to determine the lawfulness of the County's actions and to "declare that the DRMS permits control over the County permits, and the BLM permits and authorizations control over both of them." Ex. A ¶¶ 68-73, 76. RMR also asserts

7

in the State Court Action that "Defendants lack authority to prohibit certain uses of the Property that have been approved by the BLM"—the same claim they assert in this case. *Id.* ¶ 63. RMR has likewise asked this Court to find the County's process in issuing the NOV was arbitrary, capricious, and not supported by competent evidence. *Id.* ¶¶ 69-70. These same determinations underlie Plaintiff's federal constitutional claims. ECF No. 1, ¶¶ 73-97. There is nothing preventing Plaintiff from asserting its federal claims in the State Court Action. Accordingly, the second *Younger* element is satisfied.

### C.     The State Court Action Involves Important State Interests

The State Court Action involves an important state interest—the County's ability to apply and enforce "restrictions associated with its mining regulations." *Ree-Co*, 2011 WL 13272411, at *8. The County has a significant interest in protecting the environment and the public health, safety, and welfare of its inhabitants, which it furthers and protects through regulations, the permit system, and enforcement. For example, Section 14-401 of the Garfield County Land Use and Development Code specifically requires all permit applicants, like Plaintiff, to address the potential environmental impacts of its proposed actions. Garfield County, Land Use and Development Code § 14-401 (2018), https://www.garfield-county.com/community-development/documents/2018/LUDC_Complete_10-15-2018.pdf. The State Court Action will best address the County's authority to protect these interests.

The fact that RMR alleges that federal law preempts the County's regulations is of no import. *See Ree-Co*, 2011 WL 13272411, at *8. Preemption is only relevant to the Court's analysis of this element if the state tries to regulate "in a field that is undisputedly subject exclusively to federal authority." *Eagle Air Med Corp. v. Colo. Bd. of Health*, 570 F. Supp. 2d 1289, 1294 (D.

8

Colo. 2008) (finding that assessing the merits of preemption at this stage is putting "the cart before the horse"); *see also Trans Shuttle, Inc. v. Public Utils. Comm'n*, 24 F. App'x 856, 862 (10th Cir. 2001) (unpublished) (finding that arguing preemption for this element "does no more than restate the central controversy").

That is not the case here. Federal mining law explicitly permits local and state governments to implement and enforce reasonable environmental regulations for mining on federal lands. *See, e.g., Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 586-88 (1987); *Bohmker v. Oregon*, 903 F.3d 1029, 1040 (9th Cir. 2018) (finding state bill regulating mining not preempted as a permissible environmental regulation); *see also* 30 U.S.C. § 22 (requiring compliance with "local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States"). The contours of what constitutes allowable environmental regulation is determined on a case-by-case basis, and County conditions on mining on federal lands within the County is not undisputedly preempted. As a result, Defendants satisfy the third and final element for *Younger* preemption.

Accordingly, Defendants request the Court abstain from this case under *Younger*.

## II.    ABSTENTION IS WARRANTED UNDER *COLORADO RIVER*

*Colorado River* grants this Court the power to refrain from hearing cases which are "duplicative of a pending state proceeding." *CNSP, Inc.*, 753 F. App'x at 588 (quoting *D.A. Osguthorpe*, 705 F.3d at 1233). Avoiding duplicative litigation "is at the core of the *Colorado River* doctrine." *Id.* "The doctrine permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on 'considerations of [w]ise judicial

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994).

To exercise its discretion under *Colorado River*, the Court must first determine whether the state and federal proceedings are parallel, and if they are parallel, it must then consider a non-exclusive list of factors that indicate whether "exceptional circumstances" warrant deference to the state court proceedings. *Id.* at 1081. Because the proceedings here are parallel, and the additional *Colorado River* factors strongly militate in favor of abstention, the Court should grant Defendants' motion to dismiss or stay.

### A.     The State Court Action And This Case Are Parallel Proceedings

A suit is parallel for purposes of *Colorado River* "if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 1081 (citation omitted). The suits need not be identical. Instead, the Court examines "whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006) (citation omitted). "The existence of additional parties in one suit does not of itself destroy parallelism." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990).

The State Court Action and the present case are parallel proceedings. They arise out of the exact same set of operative facts—a comparison reveals only minor differences between the complaints' underlying factual allegations. *Compare* Ex. A ¶¶ 6-63, *with* ECF No. 1, ¶¶ 8-66.

They further raise similar factual and legal issues. Both suits ask the courts to determine the County's power to regulate the quarry in light of allegedly conflicting BLM regulations and DRMS regulations. *Compare, e.g.,* Ex. A ¶¶ 70-71, 76, *with* ECF No. 1, ¶¶ 71-72, 80-88. Both

10

suits likewise ask the court to determine that the County acted arbitrarily and capriciously. *Compare, e.g.,* Ex. A ¶¶ 69-70, *with* ECF No. 1, ¶¶ 78-80. Finally, both suits challenge the process the County administered in deciding to issue an NOV, including the evidence upon which the County relied. *Compare, e.g.,* Ex. A ¶¶ 69, 77, *with* ECF No. 1, ¶¶ 92-96.

The State Court Action and this case also involve the same parties. In this case, RMR named the Board of County Commissioners as "the principal elective head and sole legislative authority of County government," as well as Garfield County, "which is governed by the BOCC," and the Commissioners acting in their official capacity. ECF No. 1, ¶¶ 3-4. Similarly, in the State Court Action, RMR named the Board of County Commissioners as "the principal elective head and sole legislative authority of Garfield County" which acts "through the acts and decisions of the Commissioners." Ex. A ¶ 2. Accordingly, there is no material difference in the defendants, and the cases are parallel. *See, e.g., Schneider*, 903 F.2d at 1156.

In light of the overlap between the two cases, the State Court Action "will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Fox*, 16 F.3d at 1081. The State Court Action can determine the propriety of the Board's NOV, whether federal or state law preempts the Board's authority, and whether the Board acted arbitrarily and capriciously in issuing the NOV. These very same determinations underlie each of Plaintiff's claims in this case. Thus, once the State Court Action is resolved, this Court "will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* at 1081-82 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). The two actions are therefore sufficiently parallel to warrant abstention.

## B. **Other Factors Weigh In Favor Of Abstention**

Once the Court has decided the proceedings are parallel, the Court considers a nonexclusive list of factors to decide "whether 'exceptional circumstances' exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Fox*, 16 F.3d at 1082 (citing *Colorado River*, 424 U.S. at 818). Other factors may include "whether federal law provides the rule of decision, . . . and the adequacy of the state court action to protect the federal plaintiff's rights." *Id.* at 1082 (internal citations omitted). "No single factor is dispositive." *Id.* On balance, the applicable factors weigh strongly in favor of abstention.

### 1. Neither Court Has Assumed Jurisdiction Over Property

Because neither court has assumed jurisdiction specifically over the relevant property, the first *Colorado River* factor is irrelevant. *See D.A. Osguthorpe*, 705 F.3d at 1234.

### 2. The Federal Forum Is Inconvenient For The Defendants

The federal forum is somewhat inconvenient in this case because Defendants are based in Garfield County, which is over 150-miles away and can be more than three- or four-hours' drive over several mountain passes from this Court. The distance may therefore impede Defendants' and interested parties' ability to attend Court hearings and actively participate in their defense. RMR also acknowledges in the State Court Action that venue is proper in Garfield County "because the BOCC resides in Garfield County and because the real property at issue is located in this County." Ex. A ¶ 5. While not a significant factor, the Court can and should consider the inconvenience of the forum. *See, e.g., D.A. Osguthorpe*, 705 F.3d at 1234.

3. Abstention Avoids Piecemeal Litigation

"The avoidance of piecemeal litigation is the 'paramount' consideration of the *Colorado River* doctrine." *CNSP, Inc. v. City of Santa Fe*, No. 17-cv-827 MCA/KRS, 2018 WL 1737549, at *5 (D.N.M. Apr. 9, 2018), *aff'd on other grounds by CNSP, Inc.*, 753 Fed. App'x 584 (citing *D.A. Osguthorpe*, 705 F.3d at 1234). Where, like here, the parties and issues in both cases are duplicative, trying both cases at the same time would, at best, be inefficient, and at worst, create inconsistent and conflicting results. *Id.* at *6 (citations omitted).

For instance, the State Court Action could determine that the Board acted arbitrarily and capriciously or that state regulations preempt the County's regulations, while this Court could determine that Defendants acted appropriately, that the County's regulations are not preempted, and that the Board's actions were therefore not arbitrary and capricious. Furthermore, in the State Court Action, RMR argues that certain aspects of the NOV are "moot" and that it "intends to exhaust its state law remedies if necessary to pursue any federal claims it may have, if such course of action is warranted in light of the disposition of this C.R.C.P. 106 action." Ex. A ¶ 77; *id.* at 10-11. If the state court agrees that certain aspects of the NOV are moot, this could lead to unnecessary advisory opinions here. Under these circumstances, abstention best avoids contradictory rulings on the same issues involving the same parties. *See, e.g., CNSP, Inc.*, 2018 WL 1737549, at *6.

4. Abstention Is Consistent With the Order in Which Plaintiff Filed the Cases

In applying the fourth factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *D.A. Osguthorpe*, 705 F.3d at 1235. But here, where neither case has progressed beyond

13

the initial pleadings, the only indicia of priority is the order in which the cases were filed. As the first-filed case, the State Court Action should take priority over the present action.

5.     State and Local Law Provide The Rule of Decision For Several Claims

Local and state law govern the disposition of at least some claims in both cases. As noted above, Plaintiff's claims in both actions allege that the Board's procedures were arbitrary and capricious, separate and apart from any federal preemption analysis. Plaintiff further claims that state mining rules and regulations preempt the County's regulations. State and local law primarily govern these claims.

Defendants acknowledge that federal law is also relevant to the disposition of some of Plaintiff's claims. Indeed, the interaction between local, state, and federal law and whether federal law preempts local and state regulation is at issue in both cases. Thus, because the actions present mixed questions of federal, state, and local law, this factor is neutral.

6.     The State Court Action Adequately Protects Plaintiff's Rights

Although federal law governs some claims, "that fact 'does not automatically compel the conclusion that the resolution of a claim arising under [federal law] is a task better suited for the federal courts,'" particularly where "[t]here is no evidence to suggest that the state court . . . is incompetent to apply federal law." *CNSP, Inc.*, 2018 WL 1737549, at *7 (first alteration in original). Plaintiff's constitutional claims in this case depend on an application of state and local law, including whether Defendants acted arbitrarily or capriciously with respect to Plaintiff's mining rights by imposing restrictions allegedly not present in the County's permit and without a proper evidentiary basis. ECF No. 1, ¶¶ 73-97. This requires the same analysis as Plaintiff's C.R.C.P. 106(a)(4) claim in the State Court Action. *See* Ex. A ¶¶ 64-73. Moreover, state courts

can, and frequently do, address federal law, including whether federal law preempts state law. *See CNSP, Inc.*, 2018 WL 1737549, at \*7 (determining state court was competent to apply federal law and protect the plaintiffs' rights in a preemption case) (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-50 (1988)). The state court is therefore an adequate forum for Plaintiff to present its claims.

7.    The Factors Weigh in Favor of Abstention

"Rather than use the factors as a mechanical checklist, a court should engage in a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Fox*, 16 F.3d at 1082). When several factors, "including the most important—the avoidance of piecemeal litigation—weigh in favor of a stay, while the other factors are either inapplicable, neutral, or weigh slightly against a stay," a court can properly exercise its discretion to abstain from the case. *Id.*

In combination, the factors support abstention. Most importantly, abstention will prevent inconsistent and conflicting results. Furthermore, Plaintiff can seek to vindicate its rights in the State Court Action, Plaintiff filed the State Court Action first, the State Court Action involves questions of the application of local and state law, and this Court is an inconvenient forum. For these reasons, extraordinary circumstances exist to justify abstention.

**CONCLUSION**

The requisite factors for *Younger* or *Colorado River* abstention are met here. Therefore, Defendants respectfully request the Court either dismiss or stay this case.

15

Date:  July 22, 2019

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:  /s/ Timothy R. Macdonald
     Timothy R. Macdonald
     Kathleen K. Custer
     370 Seventeenth Street, Suite 4400
     Denver, CO 80202-1370
     Telephone: (303) 863-1000
     Fax: (303) 832-0428
     timothy.macdonald@arnoldporter.com
     katie.custer@arnoldporter.com

     *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2019, I electronically filed the foregoing **MOTION TO DISMISS OR STAY** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

David McConaughy - dmcconaughy@garfieldhecht.com
Christopher Bryan - cbryan@garfieldhecht.com
Bailey Calhoun - bcalhoun@garfieldhecht.com

*Attorneys for Plaintiff*

*/s/ Timothy R. Macdonald by Tanya D. Huffaker*