# Exhibit A

| | |
|---|---|
| **DISTRICT COURT, GARFIELD COUNTY, COLORADO**<br>109 8th Street, Suite 104<br>Glenwood Springs, Colorado 81601<br>(970) 928-3062<br>_____<br>**Plaintiff:**<br><br>RMR INDUSTRIALS, INC., a Nevada Corporation<br><br>v.<br><br>**Defendant:**<br><br>BOARD OF COUNTY COMMISSIONERS OF GARFIELD COUNTY, COLORADO.<br>_____<br>*Attorneys for Plaintiff:*<br>David H. McConaughy, A.R. #26165<br>Christopher D. Bryan, A.R. #35522<br>Bailey A. Calhoun, A.R. #50810<br>Garfield & Hecht, P.C.<br>901 Grand Avenue, Suite 201<br>Glenwood Springs, Colorado 81601<br>Telephone:  (970) 947-1936<br>Email: dmcconaughy@garfieldhecht.com<br>       cbryan@garfieldhecht.com<br>       bcalhoun@garfieldhecht.com | DATE FILED: May 17, 2019 4:40 PM<br>FILING ID: D1227B7B89578<br>CASE NUMBER: 2019CV30087<br><br>**▲ COURT USE ONLY ▲**<br>_____<br><br>Case Number:  2019 CV<br><br>Div:<br><br><br>This case is NOT subject to the simplified procedures for court action under Rule 16.1 because this is a C.R.C.P. 106 action<br>(*See* C.R.C.P. 16.1(b)(1)) |
| **C.R.C.P. 106(a)(4) COMPLAINT** ||

Plaintiff, RMR Industrials, Inc., a Nevada corporation ("RMR"), by and through its attorneys, Garfield & Hecht, P.C., states the following as its C.R.C.P. 106(a)(4) Complaint against the Garfield County Board of County Commissioners ("BOCC"):

## NATURE OF ACTION

This appeal is a civil action filed pursuant to C.R.C.P. 106(a)(4) seeking judicial review of the BOCC's May 8, 2019, Notice of Violations issued to RMR based on a decision of the BOCC at its public meeting on April 22, 2019. RMR is seeking only appellate review of this quasi-judicial determination and decision by the BOCC and is not seeking any monetary damages from the BOCC.  RMR also seeks declaratory relief.

Garfield County District Court Case No. 2019 CV
*RMR Industrials, Inc. v. Board of County Commissioners of Garfield County, Colorado*
**C.R.C.P. 106(a)(4) COMPLAINT**
Page 2 of 11

## PARTIES, JURISDICTION, AND VENUE

1. RMR is a Nevada corporation with a registered agent at 3773 Howard Hughes Parkway, Suite 500S, Las Vegas, NV 89169.

2. The BOCC is the principal elective head and sole legislative authority of Garfield County (the "County"). The BOCC is vested with all powers, duties, and functions of the County, which it exercises through the acts and decisions of the Commissioners.

3. Pursuant to the County's Land Use and Development Code ("LUDC"), the BOCC is the final decision making body for conditional use permit applications.

4. This Court has jurisdiction over this matter and the parties pursuant to C.R.C.P. 106(a)(4) & (b).

5. Venue is proper in this Court under C.R.C.P. 98 because the BOCC resides in Garfield County and because the real property at issue is located in this County. C.R.C.P. 98(a).

## GENERAL ALLEGATIONS

6. RMR operates a limestone quarry on real property outside of Glenwood Springs, Colorado (the "Property") owned by the United States Bureau of Land Management ("BLM").

7. At all relevant times, the operations at the quarry have included blasting large slabs of limestone off an exposed cliff-face, then crushing those slabs into smaller pieces, and then milling the smaller pieces into limestone dust which is packaged for distribution and sale. This process of creating limestone dust inherently includes processing the pure limestone from large slabs into a series of gradually-smaller shapes and sizes, which are stockpiled on the site until they are processed into the next smaller stage.

8. The BLM regulates all uses on the Property.

9. The State of Colorado Division of Reclamation, Mining and Safety ("DRMS"), in addition to the BLM, regulates mining operations on the Property.

10. The Property is located in Garfield County. More specifically, it sits within the Public Lands ("PL") zone district, according to County's Land Use and Development Code ("LUDC").

Garfield County District Court Case No. 2019 CV
*RMR Industrials, Inc. v. Board of County Commissioners of Garfield County, Colorado*
**C.R.C.P. 106(a)(4) COMPLAINT**
Page 3 of 11

11. At least since the quarry was first permitted in or about 1982, the Defendants have also been regulating the mining operations on the Property pursuant to, and requiring compliance with, the LUDC or prior versions of the County's land use regulations.

12. As such, three separate entities have all been attempting to regulate the mining operations on the Property since such operations began, approximately 36 years ago. This simultaneous regulation has generated a number of conflicts between the regulatory actions of these three separate bodies of government.

13. The quarry was proposed in 1982 by RMR's predecessor in interest, Mid-Continent Resources, Inc. ("Mid-Continent"), which submitted a proposed Plan of Operations (the "Operations Plan") to the BLM and applied for a mining permit with the DRMS. Mid-Continent also applied for a special use permit from the County.

14. On or about August 18, 1982, the BLM approved the Operations Plan with certain stipulations, including that no quarrying was allowed from December 15th to April 15th each year. The BLM approval permitted the hauling of quarry material to continue year-round but required the construction and maintenance of three roads: the main haul road extension (lower road), the parking access road (middle road), and the initial development road (upper road).

15. On August 23, 1982, the County adopted Resolution No. 82-222, which authorized Mid-Continent to extract and process limestone from a 16.30 acre site within the Property.

16. Resolution No. 82-222 describes the mining site as "A 16.30 acre site in the approximate center of the SE1/4, Section 36, Township 5 S, R 89 W of the 6th P.M., situated in the County of Garfield, State of Colorado."

17. Upon information and belief, there is no specific map or survey in the County file defining the precise boundaries of the 16.30 acre site.

18. Resolution No. 82-222 also required that mining operations must comply with all present and future County regulations and stated that compliance was to be monitored through review by the BOCC every six months.

19. Further, Resolution No. 82-222 required Mid-Continent to maintain the haul road from the quarry site to the paved portion of the haul route, including maintaining dust suppression measures.

20. Resolution No. 82-222 was later incorporated into a County Special Use Permit, dated May 16, 1983.

21. The specific use authorized by Resolution No. 82-222 and reflected in the Special Use Permit is for "the extraction and processing of limestone in a quarry type of operation."

22. Neither Resolution No. 82-222 nor the Special Use Permit includes any limitation or description of particular limestone products or particular customers or uses of such products.

23. In response to Mid-Continent's mining permit application, the DRMS issued Mining and Reclamation Permit No. 82-121, dated April 25, 1983, ("Permit No. 82-121"), which authorized mining operations on a 10.6-acre site within the Property.

24. In August 1985, the BLM issued a Right of Way ("ROW") Grant for an access road that would be 35 feet wide; 12,000 feet long; and would contain 9.65 acres. The ROW terminates on December 31, 2029, and requires BLM approval of an annual operating plan addressing maintenance and use issues to be submitted by the quarry operator.

25. On July 21, 1989, Mid-Continent submitted a proposed amendment to the Operations Plan to the BLM. The BLM approved the proposed amendment on July 29, 1989, resulting in an amended operations plan (the "1989 Amended Operations Plan").

26. On August 23, 1989, DRMS approved a permit modification ("DRMS Amendment No. 1") submitted by Mid-Continent, which effectively increased the size of the quarry area established by Permit No. 1983-121 by 5.1 acres, for a total of 15.7 acres. This modification reflected "changes to the application that are being dictated by the topographic conditions that have been encountered by the quarry operator now that it has been in operation for the past two or three years."

27. From 1990 until 2009, Mid-Continent ceased operations at the quarry due to demand issues.

28. In 1992, the DRMS approved a second modification to Permit No. 1983-121 ("DRMS Amendment No. 2), which further expanded the permitted area.

29. In 2009, the DRMS issued Technical Revision 3 to Permit No. 1982-121, which added a rock dust mill to the approved processing operations. Prior to that time, some of the final processing operations had been conducted off-site.

30. In 2009, RMR's immediate predecessor in interest, an entity called CalX Minerals, LLC ("CalX"), acquired the quarry operations from Mid-Continent. By letter dated June 15, 2009 (the "2009 BLM Approval"), the BLM granted CalX permission to operate the quarry.

Case 1:19-cv-01445-RBJ-GPG Document 25-1 Filed 07/22/19 USDC Colorado Page 6 of 12

Garfield County District Court Case No. 2019 CV
*RMR Industrials, Inc. v. Board of County Commissioners of Garfield County, Colorado*
**C.R.C.P. 106(a)(4) COMPLAINT**
Page 5 of 11

31. On January 4, 2010, Garfield County issued Resolution No. 2009-97 ("Resolution No. 2009-97"), which amended the County's 1983 Special Use Permit. Resolution No. 2009-97 limited mining and processing hours, excluding truck hauling, to the time period from 7:00 a.m. to 5:00 p.m., Monday through Friday, from April 15th through December 15th of each year. This Resolution also eliminated the requirement for Board review every six months and replaced it with a requirement for review in the Board's discretion.

32. Resolution 2009-97 refers to a limestone quarry on 16.3 acres but does not identify a precise boundary or survey of the site.

33. Resolution 2009-97 references approval of "Extraction and Processing for a limestone quarry" but includes no limitation on the types of limestone products, particular customers, or particular uses.

34. Resolution 2009-97 also required CalX to submit a "Road Maintenance Plan for Transfer Trail." In response, CalX submitted an April 1, 2010, contract (the "Glenwood Tramway Contract") between it and Glenwood Tramway, LLC ("Glenwood Tramway") to satisfy this requirement. The County apparently has been treating the Glenwood Tramway Contract as the Road Maintenance Plan required by Resolution No. 2009-97.

35. Nothing in Resolution 2009-97 required the Road Maintenance Plan to be a contract with a private third-party such as Glenwood Tramway.

36. The owner of Glenwood Tramway has been a vocal opponent of the operations at the quarry.

37. By letter dated December 18, 2015, the BLM approved a prior request by CalX for an exception to the big game winter range timing limitation stipulation to allow one additional blast during the month of December each year. CalX did not seek County approval for this exception, and the County took no enforcement action.

38. CalX operated the quarry continuously from 2009 until October 2016.

39. In or about October, 2016, RMR acquired the quarry operation assets from CalX. RMR did not assume the Glenwood Tramway Contract in connection with this acquisition.

40. In an October 26, 2016 letter, the BLM approved the change of operator for the quarry from CalX to RMR.

41.  By letter dated October 28, 2016, RMR notified the BLM that the previous owner(s) had conducted operations approximately 50-75 feet outside the DRMS permit boundary in effect at the time, and committed not to access this area.

42.  On December 13, 2017, the BLM approved a request by RMR for an exception to the big game winter range timing limitation stipulation for the 2017-18, which permitted quarrying activities, including crushing and screening, between December 15th and April 15th of that season. The BLM has issued similar authorizations for other years during RMR's operations, including 2018-2019.

43.  By letter dated January 5, 2018, the DRMS accepted RMR's proposals to recreate the survey points for the permit boundary to adjust the permit boundary based on new data voluntarily submitted by RMR regarding the area disturbed by its predecessors.

44.  The DRMS has approved RMR's requested modification of the permitted acreage.

45.  The DRMS, the BLM, and the County each have different and conflicting regulations and interpretations of what is required to be included in a permitted area.

46.  The current acreage permitted by the BLM is 15.7 acres, the current DRMS permit acreage is 38 acres, and the current perimeter of the disturbed area of the quarry bench, mill bench, and main quarry roads is 20.8 acres.

47.  The area permitted by the DRMS includes the access roads to the Property, which are owned by the BLM. The County does not claim ownership of the access, nor does it perform any maintenance of such roads, nor does it require permits for the use of such roads, which are open to the public subject to BLM's regulations.

48.  The area of actual extraction and processing of limestone at the quarry is significantly smaller than 20.8 acres.

49.  On March 26, 2018, RMR sought authorization from the BLM for mineral material exploration, sampling and testing, to enable it to gain a better understanding of the dolomite deposit located beneath the limestone deposit at the quarry. On October 12, 2018, the BLM published a Categorical Exclusion regarding RMR's request; and granted the request three days later, on October 15, 2018.

50.  On June 8, 2018, June 27, 2018, and August 30, 2018, RMR submitted requests to the DRMS for exploratory drilling, sampling, and testing. On July 5, 2018, and August 31, 2018, the DRMS approved RMR's requests for up to 15 holes to be completed in 2018.

51. Local citizens, including representatives of the City of Glenwood Springs and Glenwood Tramway, requested the County's code enforcement department to review the operations at the quarry.

52. The BOCC conducted a public review hearing on April 22, 2019, for purposes of determining RMR's compliance with current County land use change approvals. At the conclusion of the hearing, the BOCC voted to direct staff to issue a Notice of Violation.

53. On May 8, 2019, the County issued a Notice of Violation to RMR. The Notice informed RMR that based on the facts adduced at the April 22, 2019, hearing, the BOCC concluded that RMR is not operating the quarry in compliance with the County land use change approvals granted via Resolution Nos. 82-222 and 2009-97. The Notice listed the following specific violations:

1. The size of the current operation exceeds the permitted 16.3 acres. (Resolution No. 2009-97 (B) (1)).
2. The operator is extracting and selling materials outside of the original approvals. (Resolution No. 2009-97 (B) (1)). The approvals granted via Resolution No. 82-222 and No. 2009-97 are for the extraction, processing and sale of limestone dust to be used in coal mines and coal fired power plants. RMR has been extracting, processing, and actively marketing various types of materials primarily used in construction of roads and retaining walls.
3. The Operator has been crushing rock within the December 15 to April 15 operation restriction. . (Resolution No. 2009-97 (B) (7)).
4. The required Maintenance Plan has not been adhered to. Resolution No. 2009-97 (B) (11) (Resolution No. 2009-97 (B) (1)). The required Road Maintenance Plan submitted to the County to meet the requirement of Resolution No. 2009-97, Condition (B) (11), was in the form of an Agreement between Cal X (then Owner of the Mine) and Glenwood Tramway LLC (Owner of the Glenwood Caverns Adventure Park), titled, *Mid-Continent Quarry and Transfer Trail Operations Agreement.* Steve Beckley, Managing Member of Glenwood Tramway, LLC has notified the County that RMR has not adhered to Section 2 of the Agreement relating to minimizing noise levels by enclosing the milling operations, and requiring the utilization of "discriminating" alarms on its rolling stock, Section 3 relating to radio usage on Transfer trail and Section 7 having to do with complying with the provisions of Garfield County Resolutions Nos. 2009-97 and 82-222.
5. The Operator drilled several exploratory holes for dolomite. This activity was not contemplated in the original approvals, nor authorized by Resolution No. 2009-97 or No. 82-222. (Resolution No. 2009-97 (B) (1)).

54. The Notice of Violation requires RMR to completely correct purported violations and cease and desist from the underlying conduct, no later than June 1, 2019.

55. The only evidence offered at the hearing to support alleged violation No. 1 was a map prepared by RMR to show the current DRMS permit boundary, which includes the access

roads. No survey or map was presented to identify the 16.3 acre County permit area or how such acreage was supposedly exceeded by extraction and processing operations.

56. Alleged violation No. 2 was based on supposed representations of CalX in the minutes of prior hearings regarding historic customers. Neither those minutes nor anything in the County resolutions specifically limited future sales to limestone dust for coal mines or coal fired power plants.

57. The alleged "other materials" referenced in violation No. 2 are simply pure limestone in shapes and sizes other than dust, all of which are necessarily generated in the process of creating dust and have always been generated and stockpiled at the quarry site.

58. Alleged violation No. 3 encompasses operations that were specifically authorized by the BLM. Moreover, there is nothing for RMR to do to comply with any such restriction by June 1 because the restriction does not apply between April 16 through December 14.

59. Alleged violation No. 4 seeks to compel RMR to comply with a private contract to which it is not a party. Moreover, County staff testified at the April 22 hearing that it had no independent evidence of any alleged non-compliance and that it was relying entirely on the representations of Glenwood Tramway.

60. Glenwood Tramway has itself failed to comply with the Glenwood Tramway Contract.

61. Alleged violation No. 5 relates to the exploratory drilling that was authorized by the BLM and is not addressed at all by either of the County resolutions. Moreover, no such activity is currently underway, so there is nothing to be done by June 1.

62. Operations at the quarry are currently authorized by (a) BLM, pursuant to the original Operations Plan and the 1989 Amended Operations Plan; (b) Permit No. 1983-121, as amended; and (c) Resolution Nos. 82-222 and 2009-97.

63. The alleged violations enumerated in the Notice of Violation involve conduct that has been previously authorized by the BLM. The Defendants lack authority to prohibit certain uses of the Property that have been approved by the BLM.

### FIRST CLAIM FOR RELIEF
### (C.R.C.P. 106(a)(4) Review)

64. RMR incorporates by reference the allegations contained in all previous paragraphs of this Complaint as though fully set forth herein.

65. Pursuant to C.R.C.P. 106(a)(4), this Court has jurisdiction over the subject matter of this action.

66. The County, acting by and through the BOCC, is a governmental body.

67. In taking testimony and authorizing enforcement action at the April 22, 2019, public meeting, the BOCC acted in a quasi-judicial fashion.

68. RMR is entitled to seek review of such quasi-judicial actions.

69. The BOCC abused its discretion and acted in an arbitrary and capricious manner by ordering RMR to cease and desist from certain operations and by threatening fines, court action, or other enforcement remedies for alleged permit violations that are nonsensical, not supported by competent evidence in the record or by the express terms of the resolutions, nor based on generally applicable standards, policies, or land use provisions.

70. The BOCC also abused its discretion and acted in an arbitrary and capricious manner by attempting to apply County land use regulations as to prohibit uses of BLM property that have been authorized by BLM regulations.

71. The BOCC exceeded its jurisdiction by issuing the Notice of Violation in conflict with both DRMS and BLM regulations, both of which trump the County's regulatory authority.

72. The LUDC does not provide for any appeal of the BOCC's decision, so RMR has exhausted its administrative and other remedies. There is no plain, speedy and adequate remedy otherwise provided by law.

73. RMR is adversely affected and stands to lose significant revenue if it is forced to cease or limit its operations as purportedly required by the Notice of Violation.

## SECOND CLAIM FOR RELIEF
(Declaratory Judgment Pursuant to C.R.C.P. 57)

74. RMR incorporates all preceding allegations by reference.

75. RMR seeks a declaration of its rights under Resolutions 82-222 and 2009-97 and its obligations, if any, with respect to the Notice of Violation.

76. The Court should declare that the DRMS permits control over the County permits, and the BLM permits and authorizations control over both of them.

77. With respect to the Notice of Violation, the Court should declare:

   a. The 16.3 acres referenced in the County permit is not precisely defined by the County, but does not include the access roads or other areas not actively used for extraction or processing, and there is no violation. Moreover, this acreage restriction directly conflicts with a DRMS regulation, so it must yield to these controlling state regulations;

   b. There is no enforceable County restriction on the size or shape of limestone products that may be extracted, processed, or sold, nor is there any enforceable restriction on specific customers or uses of the end-products;

   c. The seasonal restriction from December 15 to April 15 does not apply because the BLM has issued exemptions, and the Notice of Violation's purported requirement to comply by June 1 is moot because that date is outside the restriction period;

   d. Enforcement of a private contract as the "Road Maintenance Plan" is an unlawful delegation of the County's authority to a private entity and is an invalid exercise of authority, especially where the subject roads are owned and controlled by the BLM; where the contract conflicts with BLM regulations; and where the private entity has not complied, vocally opposes the mining operations, and where its testimony supplied the only evidence of non-compliance contained in the record.

   e. Drilling exploratory holes for dolomite is outside the scope of the existing County permits and not a violation, is not subject to regulation by Garfield County, and in any event is moot for enforcement by June 1, 2019, because the activity is not presently occurring.

## RESERVATION OF RIGHTS

RMR reserves any and all rights, including, but not limited to, amending and supplementing this Complaint and moving to certify the record as necessary. RMR acknowledges that the facts alleged herein may provide the basis for claims asserting violations of federal law, such as claims arising under 42 U.S.C. § 1983 based on the deprivation of RMR's federal constitutional rights to substantive due process and to be free from any taking of its property interests in the quarry without just compensation. RMR hereby notifies the Court that it desires any federal causes of action arising from the facts alleged herein to be heard by a federal court. RMR therefore intends to exhaust its state law remedies if necessary to pursue any federal

Garfield County District Court Case No. 2019 CV
*RMR Industrials, Inc. v. Board of County Commissioners of Garfield County, Colorado*
**C.R.C.P. 106(a)(4) COMPLAINT**
Page 11 of 11

claims it may have, if such course of action is warranted in light of the disposition of this C.R.C.P. 106 action. RMR therefore reserves the right to pursue inverse condemnation proceedings or other claims in this Court and/or to pursue its federal claims in federal court, in accordance with applicable law.

## PRAYER FOR RELIEF

WHEREFORE, RMR respectfully requests that this Court review the BOCC's decision and the Notice of Violation and enter judgment determining that the BOCC, in finding violation of the County permit and authorizing the Notice of Violation, exceeded its jurisdiction and abused its discretion, and order that the Notice of Violation is unenforceable.

Date:  May 17, 2019.          Respectfully submitted,

GARFIELD & HECHT, P.C.

_____
David H. McConaughy, A.R. #26165
Christopher D. Bryan, A.R. #35522
Bailey A. Calhoun, A.R. #50810
*Attorneys for Plaintiff*

Address of Plaintiff:
c/o Garfield & Hecht, P.C.
901 Grand Avenue, Suite 201
Glenwood Springs, Colorado 81601